UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cr-00027-SEB-KMB |
| | ) | |
| DANIEL ELLIOTT, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING GOVERNMENT'S MOTION TO RECONSIDER RELEASE ORDER**

This matter is before the Court on the Government's Motion for Reconsideration, dkt. 25, of the Order Setting Conditions of Release, dkt. 27, entered by the Magistrate Judge on July 17, 2025, following a hearing conducted earlier that day, at which the Magistrate Judge denied the Government's request for Defendant Daniel Elliott's ("Mr. Elliott") pre-trial detention.[1] The Government timely moved for reconsideration on July 17, 2025, and Mr. Elliott filed his response on July 23, 2025. The Government was given through July 24, 2025, to file a reply but chose not to do so.

Mr. Elliott is charged in the Indictment with three counts of Transmitting Threats via Interstate Communications, in violation of 18 U.S.C. § 875(c).[2] According to the Indictment, on May 5, 2024, Mr. Elliott transmitted an email communication to Victim 1, the

---

[1] The Order Setting Conditions of Release was entered on our docket on July 18, 2025. Dkt. 27.
[2] Section 875(c) provides that "[w]hoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 875(c).

1

CEO of a large company who resides in Virginia, stating, "If you have children - I am going to find them and murder you in front of them." Dkt. 1 at 2; Dkt. 24-1 at 1. That same day, Mr. Elliott forwarded the email message to Victim 2, a former coworker from a Michigan law firm wherefrom Mr. Elliott was terminated in December 2019. On October 9, 2024, Mr. Elliott sent the following electronic correspondence to the employer of Victim 3, who is a New York reporter:

> "CUNT WILL GET KNIVED"
>
> "ARREST THIS CUNT OR I WILL KILL HER MYSELF"
>
> "I'll kill you myself if the government doesn't"
>
> "Your cunt is dead"
>
> "there is nothing in my life you do not ruin"
>
> "I hope your family has some serious protection."
>
> "die"

Dkt. 1 at 3. Unlike Victim 2, whom Mr. Elliott knows personally, neither Victim 1 nor Victim 3 has met Mr. Elliott in person. *Id.* at 1.

On July 17, 2025, the Magistrate Judge held a detention hearing and reviewed the above-recited information drawn from the Indictment as well as the Pretrial Services Report, the testimony of Federal Bureau of Investigation Special Agent Nate Husak ("Agent Husak"), and eleven (sealed) exhibits. The facts adduced at the detention hearing, which are undisputed by the parties, reveal that, throughout 2024, Mr. Elliott engaged in a pattern of transmitting electronic communications, principally through email, to Victims 1–3, law enforcement agencies, and news outlets, which communications often contained vulgar

and/or threatening messages. At the detention hearing, the Government proffered additional evidence documenting Mr. Elliott's communications, including, for example, a May 2024 email forwarded from Mr. Elliott to Victim 1, stating, "I will attend your funeral only so as to be able to spit on you." Dkt. 25 at 2–3.

Mr. Elliott, who possesses a J.D. degree and was employed at a Michigan law firm, was terminated by the firm in December 2019 after Victim 2 reported him to Human Resources for "possess[ing] . . . inappropriate items in the workplace," in violation of company policy. Dkt. 24-2 at 1. After Mr. Elliott began contacting Victim 2 in May 2024, Victim 2 promptly notified local law enforcement, and, on May 13, 2024, state officials filed a criminal complaint against Mr. Elliott for malicious use of telecommunication services, in violation of Michigan law. Dkt. 24-2 at 3.[3] Meanwhile, Victim 2 sought and, on May 24, 2024, obtained, a protective order prohibiting Mr. Elliott from contacting her. Dkt. 24-4 at 1. Mr. Elliott was personally served with the Michigan protective order on June 6, 2024. Dkt. 24-3.

Several months later, on October 20, 2024, Mr. Elliott emailed various law enforcement agencies, stating, "I am moving to New York and Washington D.C. . . . If I am still here at the end of the year - I will start killing every law enforcement officer I see." Dkt. 24-4 at 9. Mr. Elliott forwarded his October 20th email to several additional recipients, including Victim 1, and copied more than a dozen others, including Victim 2 and his

---

[3] We properly take judicial notice of the Michigan state court proceedings. *Depuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 403 F. Supp. 3d 690, 695 (S.D. Ind. 2019) ("It is well settled that orders entered by a state court 'are public records and appropriate subjects of judicial notice.' ") (quoting *In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018)).

mother. In the body of the forwarded email, Mr. Elliott stated that "[w]hen Cindy" (his mother) "lets me know what she's thinking tomorrow - I will let her know that she and everyone in the cc line is part of a kill list they should now clearly understand." *Id.* In October 2024, Mr. Elliott also posted on X (formerly Twitter), stating, "I am going to so bury [Victim 3] underground that [sic] her last words on Earth sound like dirt speaking." Dkt. 24-9.

After Mr. Elliott reinitiated contact with Victim 2 in October 2024, Victim 2 returned to Michigan state court on October 29, 2024, seeking enforcement of the protective order. On November 5, 2024, Mr. Elliott was served with an order to appear in Michigan state court for a November 20, 2024, show cause hearing concerning his alleged violations of the protective order. Dkt. 25-1 at 1. On November 6, 2024, Mr. Elliott sent an email to more than a dozen news outlets, individuals (including Victim 1), and law enforcement agencies. The body of the email contained a photograph of the Michigan protective order with a subject line that read, "Who's the judge?" Dkt. 24-6. Mr. Elliott did not appear at the November 20, 2024, hearing, which failure led the state court to find him in criminal contempt and to issue a bench warrant for his arrest. Dkt. 24-4 at 3.

On December 19, 2024, Mr. Elliott was arrested on the Michigan bench warrant after federal authorities, including Agent Husak, executed a search warrant (relating to a concurrent federal investigation) of Mr. Elliott's Indianapolis residence. Agent Husak testified that he had interviewed Mr. Elliott, who admitted having sent the communications at issue in this case. Mr. Elliott also conceded that the email accounts and social media

4

handles belonged to him. (At the detention hearing, Agent Husak testified that law enforcement has also collected subscriber and IP information tying Mr. Elliott to the alleged offenses.)

As Mr. Elliott remained in state custody awaiting disposition of his Michigan charges, a federal grand jury returned the instant indictment on February 19, 2025. On March 3, 2025, Mr. Elliott pleaded *nolo contendere* to the Michigan charges and received a 180-day jail sentence. After completing his state sentence in May 2025, Mr. Elliott was transferred to federal custody and transported to our district, in accordance with Federal Rule of Criminal Procedure 5(c)(3). The Court conducted an initial appearance with Mr. Elliott on July 9, 2025, during which the Government moved for pretrial detention.

According to the Pretrial Services Report (the "PS3"), Mr. Elliott is thirty-four years old and resided in the Indianapolis area from the time of his birth until he reached twenty-three years of age, at which time he moved to Michigan to obtain a Juris Doctor and a Master of Business Administration degrees from Michigan State University. He returned to Indianapolis in August 2020. From October 2023 through January 2024, Mr. Elliott resided at various "unknown hotels" in Maryland and Nebraska before returning to Indianapolis in January 2024, where he has resided with his mother and thirty-six-year-old sister. Except for the instant (and related Michigan) charges, Mr. Elliott has no criminal history, no history of substance abuse, and no known mental health diagnoses (though his mother has indicated that Mr. Elliott "may benefit from anger management treatment"). Dkt. 16 at 5. Although Mr. Elliott has an extensive record of international travel, he has not left the country since 2017. According to the PS3, Mr. Elliott's passport is expired. *Id.* at 4. Mr.

5

Elliott is currently unemployed, though he previously was self-employed through his money management businesses.[4]

Based on the evidence presented and reviewed at the detention hearing as well as the findings outlined the PS3, the Magistrate Judge ordered that Mr. Elliott be released from pretrial detention to home incarceration so long as he:

- Remains under twenty-four-hour GPS-monitored lockdown at his residence, except for medical necessities, attorney visits, court appearances, and any other activity specifically authorized by the Court within the Southern District of Indiana;
- Submits to supervision by Pretrial Services;
- Actively seeks employment;
- Relinquishes his passport to Pretrial Services;
- Avoids any and all contact with victims/witnesses and avoids discussing the details of this case with any relative;
- Does not possess a firearm or other weapon;
- Abstains from alcohol and any other controlled substance, unless prescribed by a medical provider;
- Submits to drug testing if and when required by Pretrial Services;

---

[4] The PS3 states that Mr. Elliott "plans on going back to managing money through his businesses." Dkt. 16 at 4. At the detention hearing, however, Mr. Elliott represented that he would instead seek more traditional line of employment.

- Participates in a program of inpatient or outpatient mental health treatment, if directed by Pretrial Services;

- Reports every contact with law enforcement personnel to Pretrial Services as soon as possible; and

- Does not own or possess any internet-enabled device unless authorized by Pretrial Services, which may install hardware or software systems to monitor the use of the equipment.

Dkt. 27 at 2–3.

After conducting a *de novo* review of the pretrial release order, pursuant to 18 U.S.C. § 3145(a), we conclude that the Magistrate Judge succeeded in crafting a combination of conditions reasonably capable of assuring Mr. Elliott's presence at future hearings and the safety of the community. *See also United States v. Torres*, 929 F.2d 291, 291–92 (7th Cir. 1991) (in conducting "review" of magistrate judge's detention order, the district court "may start from scratch"). Accordingly, we hold that, under the circumstances presented here, Mr. Elliott's pretrial release is warranted, based on the conditions outlined in the Order Setting Conditions of Release. Dkt. 27.

Under § 3142(e)(1), a defendant "shall be" detained before trial if the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community . . . ." 18 U.S.C. § 3142(e)(1). In determining whether conditions of release will reasonably assure a defendant's appearance and the safety of the community, the Court takes into account several factors, including: (1) the nature and circumstances of the charged offense; (2) the weight

7

of evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). The Government ultimately bears the burden proving flight risk by a preponderance of the evidence and danger to the community by clear and convincing evidence. *United States v. Portes*, 786 F.2d 758, 764–65 (7th Cir. 1985).

In reviewing these factors and applying these legal principles to the case at bar, we hold that the Government has not satisfied its burden of establishing Mr. Elliott's risk of flight by a preponderance of the evidence and/or his danger to the community by clear and convincing evidence. We review each § 3142(g) factor below.

First, our evaluation of the nature and circumstances of the offense charged includes whether the offense is a "crime of violence." 18 U.S.C. § 3142(g)(1). The parties here do not dispute that Transmitting Threats via Interstate Commerce constitutes a "crime of violence," as one of its elements involves the threatened use of physical force. *Id.* § 875(c) (prohibiting communications involving "any threat to kidnap any person or any threat to injure the person of another"); *see United States v. Ker Yang*, 799 F.3d 750, 752 (7th Cir. 2015) (courts must look at the statutory elements of an offense without regard to fact-specific allegations in order to determine whether the offense is a crime of violence). A violation of § 875(c) carries a maximum statutory sentence of five years. 18 U.S.C. § 875(c). As to the specific circumstances of Mr. Elliott's alleged offense(s), the Court acknowledges that Mr. Elliott's electronic communications formed part of a seriously unsettling pattern and practice of harassing and threatening Victims 1–3. We note that Mr. Elliott is accused of having included both law enforcement personnel and news outlets as recipients of his

correspondence, indicating that Mr. Elliott has not sought to conceal his conduct. That said, we find that the nature and circumstances of the offense charged weighs in favor of Mr. Elliott's pretrial detention.

Second, the weight of the evidence against Mr. Elliott in this prosecution appears strong. Agent Husak testified as to the extensive digital footprint left by Mr. Elliott's electronic communications. Agent Husak also established from his investigation the tie between the subscriber and IP information and Mr. Elliott, evidence buttressed by Mr. Elliott's admission to his ownership of the accounts at issue here. Accordingly, the strength of the evidence also weighs in favor of pretrial detention.

Third, Mr. Elliott's history and characteristics weigh for the most part against his pretrial detention. As reflected in the record, Mr. Elliott possesses strong educational credentials and minimal criminal history. The PS3 revealed no major physical problems or prior mental health diagnoses. Additionally, there is minimal record evidence about any use or abuse of controlled substances. Although Mr. Elliott is currently unemployed, he does have a record of stable employment. His strong ties to Indianapolis, including residing with his mother (though she herself was a target of some of his threats), also weighs in his favor, though we recognize that his time living in Maryland and Nebraska demonstrate that he has the experience and ability to relocate with ease. While the language of the threats allegedly issued by Mr. Elliott is alarming in its stated intentions and methods, to the extent Mr. Elliott's history and characteristics reflect that he is a danger to the community, we find that the conditions of his pretrial release ameliorate the threat of harm.

Fourth, the nature and seriousness of the danger Mr. Elliott poses to the community do raise several significant concerns. For example, Mr. Elliott has indicated an intent to travel to New York and Washington D.C., the former of which is where Victim 3 resides. Additionally, Mr. Elliott has demonstrated a willingness to disobey prior court orders, as evidenced by his failure to abide by the Michigan protective order as well as his failure to appear at the Michigan show cause hearing. Moreover, as highlighted by the Government, Mr. Elliott committed the alleged offenses while living with his mother at the same residence where he would be released, suggesting that, with internet access, he could easily reengage in the conduct underlying the present charges.

While we acknowledge the Government's concerns, we find that the combination of conditions imposed by the Magistrate Judge reasonably assures Mr. Elliott's appearance as well as the safety of the community. Mr. Elliott's failure to appear at the Michigan show cause hearing can and will be addressed by our requiring him to submit to twenty-four-hour location monitoring. The Government has therefore not met its burden of establishing by the preponderance of the evidence that no condition or set of conditions can reasonably guarantee Mr. Elliott's appearance future court proceedings.

Likewise, we conclude that the combination of conditions outlined in the release order—namely, the prohibition on Mr. Elliott contacting any victims or witnesses, coupled with his non-access to the internet, unless unapproved and monitored by Pretrial Services, as well as his participation in a mental health treatment program—reasonably assures the community's safety. Although the record establishes that Mr. Elliott has previously disregarded a court-imposed prohibition on his contacting Victim 2, we find that the additional

conditions outlined in the order of release, especially the restriction on Mr. Elliott's access to internet-enabled devices, counteract the likelihood of Mr. Elliott's noncompliance. Therefore, we conclude that the Government has not shown by clear and convincing evidence that no condition or combination of conditions can reasonably assure the community's safety.

For these reasons, Magistrate Judge's Order Setting Conditions of Release, dkt. 27, is **AFFIRMED**, and the Government's Motion for Reconsideration, dkt. 25, is **DENIED**. One final note: Any failure in terms of Mr. Elliott's full compliance with each condition of his release will be promptly addressed by the Court to determine whether this order should be modified or rescinded.

Mr. Elliott shall be **RELEASED** forthwith to the custody of the United States Marshals Service, which shall transport Mr. Elliott to the Birch Bayh Federal Courthouse for processing by the Probation Department.

IT IS SO ORDERED.

Date: 7/29/2025

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Joseph Martin Cleary
INDIANA FEDERAL COMMUNITY DEFENDERS
joe_cleary@fd.org

Kelsey Massa
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kelsey.massa@usdoj.gov

Electronic Notice to USM-C

Electronic Notice to USPO